Smith v. Shar Alan 







AFFIRMED
OCTOBER 11, 1990

NO. 10-89-223-CV
Trial Court
# 9686
IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

ORON SMITH, ET AL,
   Appellant
v.

SHAR-ALAN OIL COMPANY, ET AL,
   Appellee

* * * * * * * * * * * * *

 From 278th Judicial District Court
Leon County, Texas

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
Oron Smith and Willie Bell Handsborough Browder, Appellants,
sued Shar-Alan Oil Company, Harken Exploration Company and David
Free, Appellees, requesting that the trial court declare
unenforceable two oil and gas leases executed by Smith and
Browder,


 and that they recover damages for fraudulent
misrepresentations and their attorney's fees. After a jury found
all questions in favor of the Appellees, the court awarded judgment
against Smith and Browder and ordered them to pay Appellees'
attorney's fees incurred in defending this action. Smith and
Browder appeal from this judgment by six points of error claiming
that certain jury questions should not have been submitted. These
points will be overruled and the judgment affirmed.
The evidence at trial revealed the following sequence of
events:
1.Richard Davis, the owner of 255 acres covered by
the oil and gas leases in issue in this case, died
intestate in 1957. Shar-Alan acquired from Davis's
legitimate heirs oil and gas leases covering this
property and, on August 16, 1985, spudded a well on
the tract. Thereafter, David Free, the County
Surveyor of Leon County, heard that Smith and
Browder were the illegitimate children of Davis and
therefore had a possible ownership interest in the
land.
2.On approximately August 30, 1985, Smith and Browder
each executed and returned an oil and gas lease
covering the tract to David Free. At that time,
Free tendered to each of them a check in the amount
of $100 bearing the words, "For Richard Davis
Lease." Free testified that he told Smith and
Browder that he would pay, in addition to the $100,
$250 for each mineral acre they established title
to, conditioned on the approval of that title by an
attorney. Free originally calculated this amount
to be $5,875 each, based upon the interest he
believed they would own as heirs of Davis. He
handed each of them a draft in that amount along
with the two $100 checks when he was delivered the
leases. Across the top of both drafts, Free wrote
"60 day clearance-contingent upon attorney
approving title." According to Free, this meant
"that sixty days after they were declared to be an
heir of Richard Davis, the drafts would be
honored." The leases were filed for record on
September 17, 1985. 
3.After the leases were filed, the legitimate heirs
of Davis refused to recognize Smith and Browder as
Davis's children. Subsequently, Smith and Browder
filed an heirship case, resulting in a jury verdict
and trial court judgment in their favor in
September of 1987. 
4.Because Browder tried to negotiate her $5,875 draft
after the heirship case was filed, on October 7,
1985, A. Keller Doss, an attorney representing
Shar-Alan, wrote a letter addressed to both Smith
and Browder setting forth his understanding of the
terms of the transactions of August 30, 1985. 
Specifically, Doss wrote: "Mr. Free has previously
informed you, both verbally and in writing, that he
cannot honor the draft for the balance of the bonus
to be paid on the lease until such time as the
Court in Leon County, Texas declares you to be an
heir of Richard Davis." (Shar-Alan was responsible
for this letter instead of Free because there was a
verbal agreement at this time for Free to assign
the leases to Shar-Alan. The assignment was made
in writing in December, 1985.)
5.In 1986, during the pendency of the heirship case,
Shar-Alan drilled another well on the tract. Shar-Alan asserts that this second well would never have
been drilled had it known that Smith and Browder
were going to question the validity of the leases.
6.As soon as the heirship case established that Smith
and Browder were heirs of Davis, Free tendered each
of them a cashier's check in the amount of $9,375
which was based upon their respective ownership
interests in the property. On the advice of their
counsel, Smith and Browder refused to accept the
checks.
7.In December, 1988, Shar-Alan sold substantially all
of its assets to Harken. However, the purchase
agreement between Shar-Alan and Harken excepted the
leases in issue in this case, but provided for an
assignment of such leases if this case is resolved
"in a manner permitting the conveyance of all or
any portion of the withheld leasehold interests . .
. free of any claim by the plaintiffs." Smith and
Browder allege that they joined Harken in this case
as a defendant "for accounting purposes due to its
position as a succeeding operator."
The argument underlying almost all of Appellants' points of
error is that the leases were ineffective because of the failure of
a condition precedent, i.e. the honoring of the drafts within sixty
days. However, this argument assumes that the honoring of the
drafts within sixty days was actually a condition precedent to the
formation of the contract. Smith and Browder assert, citing Sun
Exploration and Production Co. v. Benton, 728 S.W.2d 35 (Tex.
1987), that the "sixty day clearance" language written on the
drafts required Free to approve title and honor the drafts within
sixty days from the date they were tendered, and because this
"condition precedent" was not performed, the leases should be set
aside. The court in Sun held:
A contemporaneously exchanged draft and deed must be
construed together. Puckett v. Hoover, 146 Tex. 1, 202
S.W.2d 209, 211 (1947). Here, the language on the face
of the draft made Sun's approval of title a condition
precedent to formation of the contract. Where the
grantee imposes certain conditions precedent to
acceptance, title does not pass under the deed until
fulfillment of such conditions.

Id. at 37. Sun is not analogous to this case. In Sun, the items
exchanged by the parties indicated that the contract was
conditional. In that case, the prospective lessor was not trying
to set aside the lease; he was trying to show that the oil company
had breached the contract by not honoring the draft. Because of
the notation on the draft, "15 days after sight and upon approval
of title," there was a condition precedent both to the liability on
the draft and the formation of the lease contract. Id. Here, we
do not have two sets of items to be construed together, but three--the leases, the drafts, and the checks. In interpreting the
contract, the court not only had to consider the "sixty day
clearance" language on the drafts, but also the leases, the checks
and the checks' notations, "For Richard Davis Lease."
In their first two points of error, Smith and Browder complain
that the court erred when it denied their motion for instructed
verdict and submitted Jury Question Number One which asked:
Do you find that on or before August 30, 1985 there was
an agreement between David Free, Oron Smith and Willie
Bell Handsborough Browder that the oil and gas leases in
question would be returned if the drafts in the sum of
$5,875.00 each were not paid within sixty days of August
30, 1985?

Smith and Browder assert that there existed no material issue of
fact for the jury to decide because the "condition precedent" was
not performed. However, the issue involved is whether or not there
was, in fact, a requirement of the alleged condition precedent. 
The primary concern of the court in the interpretation of a
contract is to ascertain and to give effect to the intentions of
the parties as expressed by the instrument. R & P Enterprises v.
LaGuarta, Gavrel & Kirk, 596 S.W.2d 517, 518 (Tex. 1980). If,
after applying the established rules of construction, a court
determines that the contract is ambiguous, that is, capable of more
than one meaning, parol evidence may be admitted to help resolve
the ambiguity, and, if such evidence is conflicting, the question
of the parties' true intent is for the jury. See Trinity Universal
Ins. Co. v. Ponsford Brothers, 423 S.W.2d 571, 575 (Tex. 1968). In
this case, there was a simultaneous exchange of 1) an unconditional
lease, 2) drafts bearing language making, at the very least,
liability on the drafts conditional, and 3) checks, bearing
notations indicating that the checks were the consideration for the
leases. The parol evidence indicated that Smith and Browder
believed that the drafts would be honored within sixty days from
the date they were received and that Free believed that not only
were the drafts payable sixty days from the date they were declared
to be heirs of Richard Davis, but that also the leases were
unconditional at the time they were tendered to Free. Because of
this conflicting evidence, the court was correct in reserving for
the jury the resolution of this conflict.


 See id. 
Smith and Browder also argue that because Free did not plead
ambiguity, the court could not find that there was an ambiguity and
place the question of the intention of the parties before the jury. 
Even though Shar-Alan pleaded ambiguity, Smith and Browder claim
that it is not a "true assignee" of Free, and therefore cannot make
assertions Free could have made, because title never passed due to
the failure of the performance of the alleged condition precedent. 
To argue that the jury question should not have been submitted
because there was no performance of the alleged condition precedent
creating an assignable contract, when the jury question asked
whether there was, in fact, such a condition precedent to the
contract, is a non sequitor. 
Additionally, even if we were to assume that Smith and Browder
are correct in their assertions that this was merely a "contract to
lease" and that the performance of the alleged condition precedent
was required, the court would still have been correct in denying
the motion for instructed verdict because there were pleadings and
proof of the affirmative defenses of waiver, estoppel and laches
which could have worked to excuse the performance of the alleged
condition precedent. See Puckett, 202 S.W.2d at 212; 34 TEX. JUR.
3d Equity § 54 (1984). These issues presented material questions
of fact that the jury, and not the court, had to decide.


 
Appellants' first two points are overruled.
Appellants stress in their third point of error that once the
court decided it would place the question of the intention of the
parties before the jury, it should not have submitted Jury Question
Number One, but should have submitted Appellants' requested jury
question numbers two, three, four and six. These requested
questions were:
2. Do you find that DAVID FREE entered into an agreement
with ORON SMITH and WILLIE BELL HANDSBOROUGH BROWDER to
purchase the leases dated August 30, 1985?
 
3. Do you find that the conditions stated on the draft
"60 day clearance-contingent upon attorney approving
title" was performed?
 
4. Do you find that SHAR-ALAN by and through DAVID FREE
caused the drafts to ORON SMITH and WILLIE BELL
HANDSBOROUGH BROWDER to be returned unpaid after the
expiration of sixty (60) days as stated on the drafts?
 
6. Do you find that ORON SMITH and WILLIE BELL
HANDSBOROUGH BROWDER repudiated their leases before DAVID
FREE tendered the promised consideration?

The requested jury question number two addressed an issue which was
not in dispute. As Shar-Alan and Harken correctly note in their
brief, "there was some question as to whether the agreement to
purchase the leases was conditional or outright, but there was
never a question that plaintiffs and David Free agreed, at some
time, under some conditions, that he would purchase the leases from
them." Therefore, the court did not err in refusing to submit this
question. See Sullivan v. Barnett, 471 S.W.2d 39, 44 (Tex. 1971). 
Neither did it err in refusing to submit requested jury question
number four which also asked about an issue not in dispute. There
was no question that the drafts had not been cleared within sixty
days from any time period. They were not cleared within sixty days
from August 30, 1985, and they were not cleared after the heirship
case was decided. Smith and Browder were, however, tendered
payment based upon their respective ownership in the property after
the trial of the heirship case resulted in their favor, but they
refused to accept such payment. Requested jury question number
three is confusing because it is not clear whether the "conditions"
stated in the question were conditions to the lease contracts
themselves or to the liability on the drafts. Requested jury
question number six is as confusing as number three. The
"consideration" stated in the question could be referring to the
$100 checks, or, to the $250 per mineral acre. Both of these
questions were properly refused.
As for the submission of Jury Question Number One, first, 
courts are encouraged to submit "broad-form questions" (TEX. R.
CIV. P. 277); and, second, none of the proposed jury questions
asked the issue in dispute--whether the honoring of the drafts
within sixty days from the date they were tendered was a condition
precedent to the formation of the leases. Point three is
overruled.
Appellants' fourth point of error addresses the submission of
Jury Question Number Two which asked:
Do you find that David Free made fraudulent
representations to Oron Smith and/or Willie Bell
Handsborough Browder on or before August 30, 1985?

Smith and Browder maintain that the court erred in submitting this
question because their pleadings asserted that it was Shar-Alan
that had committed fraudulent representations, "by and through its
agent, David Free." This jury question was followed by a later
jury question asking if Free was Shar-Alan's agent. The two
questions together presented the issue of whether Shar-Alan
committed the acts which Smith and Browder asserted it committed. 
Therefore, no error is presented by this point.
Jury Question Numbers eight, nine and ten are the questions
under attack by Smith and Browder in their fifth point of error. 
These questions asked if Smith and Browder waived their right to
cancel the leases, were guilty of laches, and were estopped from
canceling the leases, respectively. The jury found against Smith
and Browder on all three questions. Smith and Browder complain
that these questions should not have been submitted because Free
did not plead these affirmative defenses and because there was no
evidence to support the jury's answers. 
Initially, we must point out that the discussion of this
question is unnecessary because the jury found, by its answer to
Jury Question Number One, that the honoring of the drafts within
sixty days was not a condition precedent to the formation of the
lease contracts, and there is no point on appeal complaining that
the evidence was insufficient to support this finding. Because the
honoring of the drafts within sixty days was not a condition
precedent, and Appellants' claim was that there was a failure of
this alleged condition precedent, they did not even have a claim
which could be barred by waiver, laches or estoppel. However,
assuming that there was a requirement of and a failure to perform
this alleged condition precedent, there was some evidence at trial
to support the jury's findings. "Waiver" was defined for the jury
as "an intentional relinquishment of a known right or intentional
conduct inconsistent with claiming it." See Sun, 728 S.W.2d at 37. 
The jury was instructed that "laches" means "(1) unreasonable delay
in asserting rights; and (2) good faith change of position by
another to his detriment because of the delay." See City of Fort
Worth v. Johnson, 388 S.W.2d 400, 403 (Tex. 1964). "Estoppel" was
defined for the jury as follows:
Where a person, with knowledge, by his or her acts,
representations, admissions, or by his or her failure to
act, by his or her silence or acceptance of benefits
leads another to believe that certain facts exist and the
other person relies and acts upon such belief and would
be prejudiced if the former were permitted to deny
existence of such facts.

See Gulbenkian v. Penn, 252 S.W.2d 929, 932 (Tex. 1952). In
reviewing a no evidence point we are to "consider only the evidence
and inferences tending to support the jury verdict and disregard
all evidence to the contrary." International Armament Corp. v.
King, 686 S.W.2d 595, 597 (Tex. 1985). "If there is any evidence
of probative value to support the jury verdict we must affirm." 
Id. If there was any confusion as to when payment would be made
based upon Smith's and Browder's rights in the property, it was
cleared when they received the letter from the attorney, A. Keller
Doss, dated October 7, 1985. Smith and Browder could have asserted
at that time that they believed the honoring of the drafts within
sixty days from the date they were tendered was a condition
precedent to the lease contracts, and the leases, therefore, would
not be valid after October, 1985. There was evidence indicating
that Shar-Alan relied upon Appellants' inaction in that it would
not otherwise have drilled a second well on the property because
there were other equally favorable locations for drilling. This
evidence, at the very least, supports the jury's findings on the
questions of laches and estoppel. Therefore, Appellants' no
evidence argument fails.
Their "failure-of-pleading" argument fails as well. Shar-Alan
and Harken pleaded all of these affirmative defenses. Again, Smith
and Browder assert that Shar-Alan was not a "true assignee," and
therefore unable to make the same assertions that Free could have
made. See American Manufacturing Company of Texas v. Witter, 343
S.W.2d 943, 946 (Tex. Civ. App.--Fort Worth 1961, no writ). This
lack-of-privity argument, as it was in Appellants' first two points
of error, is based upon Smith's and Browder's belief that there
were never any lease contracts to assign due to the failure of the
performance of the alleged condition precedent. If, however, the
condition precedent was waived, barred by laches, or barred by
estoppel, it makes no difference that the condition precedent never
occurred, and the lease contracts were assignable, giving Shar-Alan
privity to the contract. See id. Point of error number five is
overruled.
By their last point of error, Smith and Browder insist that
the court erred in submitting Jury Question Number Eleven asking
the jury to determine the "reasonable and necessary attorney's fees
for the services of Defendants' attorney." They base their
complaints on two arguments: 1) "DAVID FREE presented no evidence
for attorney fees," and 2) "SHAR-ALAN OIL COMPANY and HARKEN
EXPLORATION COMPANY had no contractual or statutory basis nor
standing to support an award of attorney fees."
As Harken and Shar-Alan are quick to point out in their brief,
Free's failure to offer evidence of attorney's fees is
inconsequential because the judgment did not award David Free any
attorney's fees. The judgment awarded attorneys' fees to Shar-Alan
and Harken only, and we must indulge every reasonable presumption
to sustain this award. See Miller v. Hood, 536 S.W.2d 278, 285
(Tex. App.--Corpus Christi 1976, writ ref'd n.r.e.).
Appellants' second argument in this point of error is equally
ill-founded. Smith and Browder brought Shar-Alan and Harken into
this action. However, irrespective of that fact, Shar-Alan was an
assignee of the lease contracts, and Harken had a future right to
the assignment which depended upon the outcome of this litigation. 
Both were not only proper parties in the declaratory judgment
action requesting the court to construe the leases, but necessary
parties. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (Vernon
1986); Dorn v. Cartwright, 392 S.W.2d 181, 184-85 (Tex. App.--Dallas 1965, writ ref'd n.r.e.)(holding that a purchaser in a
contract of sale for real property was a necessary party to a suit
filed for a declaratory judgment by the seller to determine
whether, under the terms of a will, the testator gave the seller
the fee simple title to the property under contract). Clearly,
both Shar-Alan and Harken had interests in the lease contracts
which would be affected by the declaration, and therefore, they
were proper parties to the declaratory judgment action. See id. 
That being the case, the court had the authority to award
attorneys' fees to Shar-Alan and Harken. See TEX. CIV. PRAC. &
REM. CODE ANN. § 37.009 (Vernon 1986). Point six is overruled.
Shar-Alan and Harken bring two cross-points which assert
additional reasons for affirmation of the judgment. Because
Appellants have presented no error, we render our decision on this
basis and need not consider the cross-points. The judgment is
affirmed.
 
                          
TERRY R. MEANS
PUBLISHJustice

Hall, J., not participating